May it please the Court, Eric Silber, on behalf of the United States, I'd like to reserve three minutes of my time for rebuttal, and I will attempt to monitor that myself. Turning first to the issue of whether officers had to provide the defendant with a copy of a warrant during the search, there are three reasons the District Court erred. Any one of the three reasons is independently sufficient to compel reversal of the District Court's decision here. First, regardless of whether there's a constitutional violation, suppression, the exclusionary rule, is not the remedy for such a violation as the Supreme Court demonstrated last term in Hudson. Secondly, there is no constitutional right to a copy of the warrant during the search, as the Supreme Court also indicated last term in Grubbs. And finally, even if there is ordinarily a constitutional right to a copy of the warrant, the defendant was on probation in this case. As a probationer, the defendant could not have reasonably expected officers would obtain a warrant. He therefore could not reasonably expected that he would receive a copy of the warrant during the search. And that's true irrespective of the knowledge of the officers that he's on probation. Turning to the first issue, the exclusionary rule. The Supreme Court in Hudson last term made clear there are really three different arguments under the exclusionary rule itself. The first is but-for causation. The second is attenuation. And the third is the balancing of the deterrent and the social cost. And those are all separate grounds. As I've said already, even in this limited issue, all three of those grounds are independently sufficient to require reversing the suppression order here. Turning to the but-for causation, which is really the preliminary issue, defendant can't get past but-for causation here. Regardless of whether officers failed to provide him a copy of the warrant at some point during the search, officers had a valid warrant. And they found the evidence at issue pursuant to the valid warrant. So regardless of whether they handed him a copy of the warrant during the search or didn't hand him a copy of the warrant during the search, they would have found the same evidence. And in fact, that's exactly the situation that confronted the court in Hudson. There they had a, there they had a, irrespective of whether there was a knock-and-announce violation. So whether the officers had knocked or whether they didn't knock, they would have found the same evidence that they did pursuant to the warrant. And the Supreme Court there indicated that the violation was not a but-for cause of the seizure of the evidence. The but-for causation issue is decisive in this appeal. I mean, there is no but-for causation issue here. It's the same as the Supreme Court indicated in Hudson. As the case, of course, the constitutional violation of an illegal manner of entry was not a but-for cause of obtaining the evidence. Whether that preliminary misstep had occurred or not, the police would have executed the warrant they had obtained and would have discovered the gun and drugs inside the house. As I indicated, the same is true here. The second issue that the Supreme Court faced in Hudson was attenuation. And the Supreme Court indicated there when the constitutional issue wouldn't be served by suppression, suppression isn't the remedy. There, the knock-and-announce rule is designed to prevent destruction of property, to prevent violence, and to preserve personal dignity. But as the Supreme Court indicated, what it's not designed to do is prevent the seeing and taking of evidence. Well, the same problem occurs here. As the Supreme Court made clear in Grubbs, the constitutional right that's served by the warrant requirement or the execution of the warrant is notice. That does not affect the seeing or taking of evidence, just that it didn't affect the seeing or taking of evidence in Hudson itself. And in fact, here there was some notice. I mean, the most that could be said, defendant complains is the extent of the notice. But there was a notice of service of search warrant provided here. There was, which indicated that there was a judge who issued a warrant. It indicated who the judge was, and it indicated the officer for a defendant to contact for more information. So there was some notice. The most that could be said is defendant would like more because he wants the warrant itself. But if there's a constitutional violation there, it doesn't affect the officer's ability during the search to see and take evidence. And therefore, it's the same attenuation issue that occurs in Hudson. Finally, in Hudson, the court went on to balancing. It balanced the social costs against the kind of deterrent effect of applying the exclusionary rule. Now, it is true that the costs are slightly different in Hudson. With knowledge there, there were some issues. The issue that the court faced there was not quite as clear. There are going to be questions about how much time is too much, and there are danger issues associated in Hudson that you wouldn't necessarily have present here. But the important point is what the Supreme Court indicated in Rackus, which is you always have a substantial social cost any time you exclude evidence. And the question when you do the balancing under Hudson is, does the deterrent effect of applying the exclusionary rule outweigh that substantial social cost? And again, that's present in every case because you're excluding evidence that's reliable of guilt. And here, just as in Hudson, the deterrent effect is minimal. And the Supreme Court indicated in Hudson that you needed to look at the kind of value of deterrence. And there, the court indicated that, well, you wouldn't intentionally violate the knocking-around rule because it's not going to gain evidence, because it's not likely to lead to gaining of evidence. Similarly here, you wouldn't provide, fail to provide a copy of the warrant to obtain evidence during the search because it's not likely to lead to more evidence. In Hudson, the court noted that there are existent remedies that are available, such as civil lawsuits. Here, too, the defendant has the availability of civil lawsuits. Given the high social cost of suppressing evidence, the low deterrent value and the existence of other remedies, just as in Hudson, the exclusionary rule wouldn't be the remedy. Turning next to the issue of Grubbs, in Grubbs, the Supreme Court rejected this Court's precedent that there is a police-to-police rationale for providing a copy of the warrant during the search. The Court indicated instead that the purpose of the warrant requirement is to provide notice, but recognize that that is notice sufficient for the defendant to be able to challenge any ruling in a suppression hearing or to file a civil lawsuit. So if there's a – it's really notice that gives an opportunity to the defendant to challenge the warrant at a later time. There's no reason why that is required during the hearing itself – during the search itself. The defendant here unquestionably had sufficient notice to challenge the warrant in a suppression ruling. He, in fact, did challenge the warrant in a suppression ruling. And as I indicated already, he was provided during the search itself with the notice of service of search warrant, which indicated to him there was a search warrant. It indicated who the judge was who had issued the warrant, and it indicated the officer he needed to contact if he had – wanted more information about the search. He was also given a receipt for property, which told him what was taken. The notice function in this case was served, and under Grubbs, therefore, there is no constitutional violation, because the Supreme Court indicated that's the purpose of the – of providing a copy. That's what the defendant is entitled to during the search. I mean, this is a question of reasonableness of execution of the search, and the defendant is entitled to that notice, and he got that notice. I'm just wondering, to be fair to Judge Preyerson, in these – in this case, whether this recent Supreme Court authority was cited to him, or did it come out after his decision? It came out after his decision. In fact, Grubbs, as we indicated, came out after we filed our opening brief, and we addressed it in our reply brief. And we also noted at that time we didn't object the defendant filing a supplemental brief on this issue, which – But Judge Preyerson didn't have the benefit of these cases that you're arguing for. That's exactly right. And Hudson was decided after we both filed the briefs and we've addressed in 20HA letters. This is a little bit of an unusual case, because, as Judge Preyerson recognized during the hearing, he denied the suppression rulings up until post-trial, because at that time he looked at the State of Ninth Circuit precedent and said that this was a State search, Rule 41 did not apply, and there was no constitutional right. What the courts noted, though, this Court had decided in Martinez-Garcia that there was a constitutional right and it applied to State searches, and the Court also looked at the Ninth Circuit's decision, this Court's decision in Grubbs, which indicated that the – kind of the police-to-police rationale flowed from the Fourth Amendment and not Rule 41, and the Court read those two cases together and said there is a constitutional requirement. We didn't, in our brief, disagree with that. I mean, I think it was clear at that point in time that there was a constitutional right, when you read the two cases together, to providing the warrant. What we noted in our reply brief was, after the briefing was filed, Grubbs came out and Grubbs rejected that precedent. And so I think it's no fault of the district court here. The district court weighed and considered the precedent as it evolved, but it's just after the district court issued its decision, the precedent changed again. And then Hudson, on top of that, changed it further. I mean, I'd be happy to address the probationary issue, but if – I mean, it's the – it's a third alternative argument about why we would prevail. I mean, we think we get there under Hudson and Grubbs. Well, I think it's interesting because – it poses another set of interesting questions because of the question whether the police need to be aware of the probationary status of the defendant. And your – you said earlier your position is that the police don't have to be aware because it turns on the reasonable expectations of the probationer, which are less. But I'd like you to address that. Yes, Your Honor. The reason – the reason it does – the officer's knowledge is not important here is because it's the defendant's knowledge that forms his expectation of privacy, and it's the defendant's expectation of privacy that forms kind of his Fourth Amendment rights here. So the defendant knows that he's on probation, and because he knows he's on probation and in – it's not just that he's on probation, but also that he's subject to a warrantless probationary search condition, because the Supreme Court in Knights and Sampson is focused on both of those issues. But because he knows those things, he can't reasonably expect officers to obtain a warrant because his warrant condition says they don't have to, and the Supreme Court president likewise says they don't have to. I mean, the Court had indicated that in Knights. Given that he can't expect that, he can't expect to receive a copy of any warrant during a search. He doesn't – the problem here for a defendant is he doesn't know what the officers know. He can only focus on what he knows. And his expectations are he can't expect to get a warrant and he can't expect to receive a copy of it. We know that this is like standing principles. Standing principles, like this issue that we've addressed, look at the reasonable expectation of privacy of an individual, and they aren't limited in time to the search itself. They focus on what the actual expectations of privacy of the individual is. If you take, for example, a case like Minnesota v. Carter, which is a Supreme Court case in which you had an officer looking in the blinds of a apartment. The officer at the time doesn't know anything about the people that he sees inside the apartment. But in looking at whether there was standing of those people inside the contested search, the Court looked at the after-the-fact evidence, which was there was a – it was a commercial purpose, which was this cocaine operation there. There was short-term duration, and they had no prior connection to this residence and said, well, no standing. And the Court made clear there that it was the after-the-fact information that they were relying on, because the Court specifically pointed out that it was later the Court – the officers found out this information. Is there any case on point about whether the officers are – have to have knowledge that it's a probationer before they execute a search on that ground? Well, we're not – I'm not aware of any on this specific issue. I mean, obviously – I'm reasoning by analogy to standing. But is there anything on this specific point? Not that I'm aware of. I mean, I think the – we specifically noted the Paradis case from the First Circuit, which laid out the idea that – made clear that you didn't have to know in that circumstance. But that was more of an abandonment, not exactly the precise issue that we face here. It's kind of an interesting issue, because, of course, you could end up with a situation where the police executed a suspicionless – I mean, a suspicionless search on a – on somebody, and they, you know, win, get the evidence if the person happens to become a probationer, and lose if he's not. So it might be that it would be in the police officer's interest to have a rule that they were required to know of the person's status before they did the suspicionless search, which has now been authorized. Well, I think that the officers in that circumstance – there's no reason to believe the officers would go about engaging in what would they otherwise believe would – unconstitutional behavior just on the mere chance that the person would later turn out to be a probationer. That's particularly true when we're dealing with this limited issue, which is providing a copy of the warrant that's obtained to the officers by not providing the defendant a copy of the warrant in this circumstance. So there's no reason you would intentionally not do that, so that you could hope that the person might be a probationer later on down the line. Right. But I'm talking about a situation as opposed – I guess it's Samson, where the Supreme Court has now allowed suspicionless searches of probationers. That's true, although I think this Court's decision in Moreno v. Vaca would prevent officers from doing a suspicionless search without knowledge of the probation condition. But as we noted, the issue of suspicion is inherently tied to what the officers know. I mean, usually when you're focusing on whether there's probable cause or there's reasonable suspicion, you are limited to what the officers know, because it's based on the information before them. As we indicated, the reasonable expectation of privacy, which is like standing, is – which is really what standing is, frankly, because standing in the Fourth Amendment context isn't like Article III standing. It is just reasonable expectation of privacy. But that's based on the knowledge of the defendant, not the officers. It's really a different inquiry. And so although this Court in Moreno indicated that officers couldn't do a suspicionless search without knowledge of the probation or parole condition, here this is a different issue focused solely on the expectation of privacy of the individual. And because it's focused on that person's expectation of privacy, it focuses on what that person knows. I mean, as the California Court of Appeal indicated in Marcellus L., there's no reason why an officer's knowledge somehow increases the defendant's expectation of privacy. I mean, he just doesn't know what the officer knows. Here, if the officer subjectively believed the defendant was on probation but didn't say anything during the search and conducted the search the same way, there's no reason the defendant's expectation of privacy would be different because the officer had that subjective belief, whereas here, where the officer didn't have that subjective belief. It's just not simply true that the officer's – the defendant's expectation of privacy is affected by what the officers know. Well, thank you. Perhaps you should turn to the 924C argument, limited time. This is one where Judge Fragerson expressed some frustration because the words in furtherance don't have a very good definition. And if you look not only at our two or three cases on this issue, but you look at the other circuits, I'd be interested to know from the government's standpoint what you think the test is for in furtherance. Well, I think this Court in Crouse made clear that the issue is intent. And intent is oftentimes hard to determine. I mean, it's not hard to determine in gun cases alone. Intent, because it deals with the defendant's mindset, can be difficult to determine in any case. This Court in Rios really indicated, because the question is whether it's designed to promote or facilitate, which this Court has indicated that means there has to be a nexus between the gun and the drugs. And this Court said, you look at three things. You're going to look at proximity, accessibility, and strategic location. And all three were present in this case. All three factors were present, and the jury was permitted to make a determination based on that. Dealing first with proximity, the gun was found in the living room of the apartment, which was centrally located from the room where the drugs and cash from the drug sale was found. As we indicated, the drugs were found in the bathroom, and money was found in the kitchen and the bedroom. And the living room was centrally located to those items, and in fact, located between the front door and those places. And it was also the room the defendant was in at the time of his arrest. I mean, he had the gun in the room that he was present in that divided the front door from those areas. As far as strategic location, the jury could permissibly conclude this was strategically located here. Both, again, this is kind of an ideal place to have it between the front door and where the drugs and cash are. And as we indicated, where the gun was was on the way to the drugs. I mean, he had to pass the drugs. But, you know, from all these cases, do you think it's fair to say that as long as it's found on the same floor as the drugs or the money, that it's probably in furtherance? And if you have a huge house, then maybe you get more attenuated? I mean, we have a hard time drawing a line, because it almost comes down to, you know, unless it's a McMansion, then it's within some proximity to the drugs. Well, it's always some proximity. I guess you could always have an argument of some proximity, but I don't think this is some proximity. And if I could change the facts of this case slightly, if the gun was, for example, in the bedroom in a closet unloaded rather than where it was in the living room, and the drugs were in the kitchen rather than where they were in the bathroom, in that circumstance you'd have a much more difficult case, because you could really only say approximate because it's a small apartment, but it's not near where the drugs are. You wouldn't pass by the gun to get to the drugs. It's not a very strategic location to have the gun if you're defending the drugs in that circumstance. The problem for a defendant here is that this is a strategic location. The jury was permitted to make that finding because, as I indicated, the gun was on the path to where the defendant would have to go from the front door to get the drugs. And the record indicates, Government Secretary Record 179 to 181, the defendant took that path. I mean, he went from the front door to go get the drugs and returned and brought them back. And this is no different, for example, the Castillo case of the Seventh Circuit, which indicated that there the defendant kept his guns, his gun and drugs together. And the court noted that the defendant could grab the gun when he went to get the drugs, and therefore it was in furtherance. Here the two weren't kept in the same place, but the jury was permitted to make the same determination because it was on the path to the drugs. That raises the question of, you know, when we say proximity, is it proximity to the drugs or proximity to the defendant, proximity to a place where it could be readily used, moved by the front door, say? Well, I think the jury was permitted to determine any of those. I mean, I don't think proximity to the to the furthering the drug trafficking crime. If the Sixth Circuit in Swofford, for example, noted that the gun there was found in a bedroom and the drugs were in the garage, which were 10 to 15 feet away, and the court there noted, well, you may want to have the gun in the room that you're in at the time. In fact, the Court said in that circumstance, quote, in addition, the gun seems much more useful for protection purposes if it's kept close to Swofford, the potential user, rather than close to the drugs. So the jury can make that type of determination. They can also determine because it's close to the drugs, it's designed to protect the drugs. The key here is that there was evidence for the jury to make this determination. The gun was in the room the defendant was in at the time, and it was a strategic room to have the gun in because it separated the front door from where he kept his drugs and cash, and it was also specifically where it was in that room was on the way that he had to go to to get to the drugs in this circumstance. So if a drug deal took place, then he would pass by the gun and be able to arm himself. But this is a rather tiny apartment, also, for a tiny house. I mean, everything's in proximity to everything in this place. That's true, and I think that's what's important here, then, is it's not just proximity. I mean, we're not, again, if it was somewhere else, like the closet and wasn't near, it was only proximity because it was a small apartment, you would have a slightly different case. But here, I think it wasn't just proximity. It was strategic location that the jury could find, and as this Court indicated in Rios, that's an important fact. I mean, if you look at this case compared to Rios, for example, everything that was missing in Rios is present here. In Rios, the Court refused to find that there was evidence that the defendant was dealing drugs or stored drugs in his motel room. Well, here, there is evidence the defendant is dealing drugs out of his apartment, and he stores drugs in his apartment. In Rios, there was no evidence the defendant kept cash in his apartment. He had cash on himself, but he didn't have the gun on himself. The only thing that was found there were drug conspiracy documents, which there was no indication the defendant there would want to protect. Whereas here, you had the guns, excuse me, you had the drugs, and you had the cash, which the defendant would want to protect. And you had, it's not just proximity, a strategic location from which the jury can make the determination. Thank you. May it please the Court. My name is Davina Chen, and I represent Albert Lamont Hector. Mr. Hector is present in court today. Your Honors, Ninth Circuit precedent holds that the Fourth Amendment requires service of the warrant at circumstances that would render it unreasonable to do so, and that the remedy for failing to do so is suppression. The government has argued that three recent Supreme Court cases undermine Ninth Circuit precedent, but, Your Honor, they don't. Each of the Supreme Court cases can be distinguished in meaningful ways, not technical ways. Starting with the Hudson case, which is where the government started regarding the exclusionary rule. The government argues that the failure to serve a warrant is not a but-for cause of the seizure of the evidence, but the government's argument proves too much. The government could argue similarly in a case where police officers have probable cause to seek a warrant, but don't, that there is no but-for causation. The government could argue, well, they had probable cause, so they could have sought a warrant, and if they did seek a warrant, they would have received a warrant. Therefore, the fact that they failed to seek a warrant is not a but-for causation of the seizure of the evidence. Similarly here, they're arguing, well, they could have shown the warrant to Mr. Hector, but they didn't. The fact that they didn't show him the warrant isn't a but-for cause. Aren't those other cases different, though, because the question is, is a warrant required, and here they we don't even need to ask that threshold question. They have a warrant, so the only question is do they have to show it to him, correct? Yes, Your Honor. And so what would but-for mean apply to this case if it didn't mean what the government said? I think but this Court, as well as the Supreme Court, have noted that the warrant requirement isn't just can you get a warrant. The warrant serves numerous purposes. Yes, it does interpose a neutral magistrate between the officers and the evidence, but it serves two other purposes. The second purpose is to advise the officers what the limit of their authority is, and the third one is to provide a warrant. And that's a particularity. Yes. At least, at a minimum, that's a particularity requirement which we also don't have present in this case for discussion, correct? Right. So that's the second function. And the third function, which not only this Court but the Supreme Court has repeatedly mentioned, is the notice and assurance requirement. The warrant also serves the purpose of giving the occupant of the premises, if he happens to be present, sometimes they're not, and so, of course, in those cases, you wouldn't have to go out and find the occupant to say, hey, I'm about to serve a warrant on your house, but if the occupant is present, the warrant also serves a notice and assurance requirement. The Supreme Court has mentioned this requirement not just once. It's mentioned it numerous times. It mentioned it in Michigan v. Tyler. It mentioned it in Chadwick. It mentioned it recently in Grove v. Ramirez. This Court has embraced that requirement, the notice and assurance requirement, and it has adopted procedures to meet that requirement, and one of the procedures is that the warrant be served. It doesn't necessarily have to be served at the beginning necessarily or in the middle, but it needs to be served at some point. Nothing in the Supreme Court's cases have overruled that requirement. The government submits that Grubbs overrules that requirement, but, Your Honors, it doesn't, for at least three reasons. First, the discussion at the very end of Grubbs as to whether a warrant needs to be served at the out, excuse me, the outset of a search is dicta. In that case was a case about a anticipatory search, and the Court resolved two issues. One, is an anticipatory search warrant even legal? And two, after they decided that anticipatory search warrants were legal, does the condition precedent for the search warrant need to be on the warrant itself? In Grubbs, the warrant was served on the person who was at the premises, in that case the defendant. So the Court never needed to reach the issue as to whether or not the warrant needed to be served. In that case, not only was a warrant served, but a sufficiently particular warrant was served. So any discussion as to whether or not the defendant had a right to have the warrant served on him was dicta. And that's known about this. I just want to ask you about this statement in Grubbs. It says, the absence of a constitutional requirement that the warrant be exhibited at the outset of the search, or indeed until the search has ended, is evidence that the requirement of a particular description does not protect an interest in monitoring searches. So the Supreme Court seemed quite clear there that there's an absence of a constitutional requirement. But I take it your argument is that's dicta. Actually, Your Honor, the Supreme Court seemed to be questioning whether there was a constitutional requirement to serve the warrant at the outset of the search. Or it says in that same sentence, or indeed until the search has ended. So it's really looking at the service requirement. It seems that we would be kind of hard-pressed to ignore that fairly straightforward sentence. In this case, the warrant was not served at the end of the search. It was not served at any point at all. And as the concurring justices wrote in Grubbs, the Supreme Court has not reached the question as to whether an occupant of a premises may demand to see the warrant and whether they have a right to see so. They specifically say that the Supreme Court declined to reach the issue in Groh v. Ramirez, and it hasn't been determined yet. But did your client ask to see the warrant? There was evidence in the evidentiary hearings that he did, in fact. And I believe it's in the declaration. I guess what we don't have is we don't have a factual determination on that point. One way or the other, is that correct? That's true. We have the information where he alludes to it, but the district court didn't go there and reach that. The district court didn't believe that it needed to reach that issue. So another way to resolve the case, if the court found that dispositive, would be to remand to the district court for a factual determination. The facts were in dispute. Mr. Hector declared that he said, do you have a warrant, and they gave him the notice. And he said, is that it? And the officers said, yes, sir. If you look at the, the officers took chronological photos of their search. And if you look at their chronological photos, it tends to support that chain of events. Because the notice of the search warrant, and that's at Supplemental Excerpts of Record 1038. The notice of the search warrant is depicted after the money is found. And the facts of this case were that they, you know, they came, they broke into the apartment, and then they took him outside. And then they said, is there anything of value in the house? And they went back into the house. He showed them the money. And then he said, do you have a warrant or something? And they said, they gave him the notice. And he said, is that it? And they said, yes. And that apparently is when they took the photograph of the notice. The officers have a different version of events. So we were at the exclusionary rule, and the government's argument proving too much. And I think that what's sort of troubling this Court is whether or not the warrant is required to serve this third function, which is the notice and assurance function, and whether Grubbs vitiates that requirement. But Grubbs doesn't say that it vitiates the notice and assurance requirement. It only criticizes this idea that the warrant serves a so-called policing or monitoring function. It says, in fact, it quotes itself in Chadwick as to the notice and assurance requirement, and then it says, well, the Ninth Circuit argued further that the warrant serves a policing function, and that is the function that Grubbs criticized. It did not criticize the notice and assurance function. It didn't say anything about a case like this, where the defendant was present, he was completely compliant, he posed absolutely no risk. There was no reason for the officers not to serve the warrant on him, and yet they chose not to. Ginsburg, just to be clear then, the rule that would have to come out of this to satisfy your view would be that even if you serve a notice of a warrant, that it still would be unconstitutional not to serve the warrant and its contents. Your Honor, this Court has already held that at least twice. There have been a lot of cases about this particular issue, but the first one that I would say squarely held that was McGrew. Well, I guess the question is whether Grubbs changes McGrew and Grubbs won in Ramirez. I believe that Grubbs changes Grubbs won, because clearly Grubbs overruled Grubbs won. There's one. Okay. So in terms of whether it changed the reason I focus on McGrew as opposed to Martinez-Garcia is because Martinez-Garcia, there was no suppression, so it presents slightly different issues. But Martinez-Garcia did cite McGrew as good law. And, of course, in McGrew, as the Court is well aware, the officer served a warrant on the defendant, but that warrant referred to in terms of what were the items to be seized. It just said, see the affidavit, and they did not serve the affidavit. The question is, does Grubbs survive that? And our position is that, in fact, absolutely it survives that, both in Martinez-Garcia and in Grubbs, excuse me, in McGrew, this Court held that it would be presumptively unreasonable for the officers to never serve the warrant. So whether the warrant needs to be served at the outset is one question. But what if the officers never served the warrant? This Court has held that that would be presumptively unreasonable. The Supreme Court didn't touch that. It said there's no rule that it needs to be served at the outset or in any event until the end. Okay. So let me ask if, since this is one degree off of that to the extent that there was a notice of the warrant, and in those cases in McGrew, we didn't have that, correct? In McGrew, there was actually a warrant. The warrant itself was served. And that was much more of a rule. But that had the – it was like no warrant because it's like a piece of paper that says, see my affidavit, right? No. Actually, it had the location. Is that the one with the affidavit? I'm sorry. I don't mean to. But it doesn't have the particularity, correct? It didn't have the particularity. In this case, the notice didn't have the particularity. In McGrew, the warrant presumably listed the address, at least, at which the warrant was supposed to be served because warrants always list the address. In this case, the notice didn't list the address. It just said a warrant has been served at this location. And talk to Officer Fitzgerald if you have problems with it. That's it. So clearly, the so-called notice in this case was much less than the notice that was served in McGrew. In McGrew, there was an official-looking document. It had a judge's signature on it. It had a seal on it. It said that an office – a detached and neutral magistrate has found probable cause to search these premises and for the items that they may see, see the attached affidavit. In this case, there was not any of that. There was not probable cause has been found. There was no seal of the judge. There was no signature of the judge. There was not even the address of the location. All it was is, we serve a search warrant here. So if McGrew survives, clearly the search here is unconstitutional. The question is, does McGrew survive? And there's nothing in Grubbs. In Grubbs, the warrant was served. So it's hard to say that the Supreme Court, in deciding a case in which a sufficiently particular warrant was served, in which the concurring justices specifically say, we are not deciding the issue of whether a property owner or an occupant of a premises has the right to demand a warrant and to receive it. It's hard to say that that kind of case could overrule or even substantially undermine Ninth Circuit precedent. Did the Court want to hear – I suppose I should talk about the – the judge – excuse me, Judge Wardlaw asked the government if there was a case on point regarding this thing about whether the officers needed to know. And there is. The case on point is Moreno, Moreno v. Baca, which, interestingly enough, cert was denied in the Supreme Court in Moreno v. Baca on the very same day that Sampson was announced. And Sampson itself cited Sanders. And Sanders is a California Supreme Court case that also holds that before officers can use parolees – in both cases it was a parolee – a parolee search condition as a reason to search him, they need to know about it. So, yes, there's absolutely a case on point, and that case is Moreno. And – But would you address the government's argument that you're kind of looking at this through two different lenses? The Moreno v. Baca is looking backward through the police officer, and in the government's the circumstance here is the reasonable expectation of the person on whom the warrant is served. In Moreno, they specific – this Court specifically assumed the purpose of argument that a probationer, or in that case, excuse me, a parolee, would be subject to suspicion-less searches. So in Moreno, this Court specifically assumed that a defendant would not have any reasonable expectation of privacy. And yet, they still held that that petitioner, in that case because it was a Section 1983 action, a plaintiff, had standing to assert the violation. So I don't think that there's really any way to distinguish the two cases. There's nothing in Moreno that distinguishes between probation facts, which the officers need to know, and that would be the State's interest in policing probationers, and probation facts that the officers don't need to know, and that would be that the parolee has a diminished expectation of privacy. In that case, they specifically assumed for the sake of argument that the petitioner, the parolee, would have no expectation of privacy. And yet, it's still held – this Court is looking a little bit puzzled. It's still held that the officers – I'm not looking puzzled. I'm sorry. Don't try to interpret my facial expression. I was just thinking of another case. I'm sorry, Your Honor. Specifically held that the officers were not entitled to rely on that fact, his diminished expectation of privacy. So I think that Moreno v. Baca, it really can't be distinguished. Moreno v. Baca, the police officers in that case also tried to rely on standing cases, and this Court specifically said that those standing cases are totally irrelevant because those standing cases are about whether somebody has a reasonable expectation of privacy in the location. And Mr. Moreno obviously had a reasonable expectation of privacy in his body, and therefore, the standing cases are irrelevant. Moreover, in terms of what are the limitations on Mr. Hector's expectation of privacy, Mr. Moreno – Mr. Hector was on probation, so he could be required to expect that somebody aware of his probation conditions could come and search him. So an officer could say, I know you're on probation and I'm doing a probation search. That would be legal. Likewise, an officer could say, I have a warrant, and here is a copy of the warrant. I think the government – I hope that the government understands that under Moreno, they needed to get a warrant because they certainly didn't know he was on probation, so they couldn't have just done a warrantless search. What Moreno said, and what Judge Pregerson very clearly said in this case, is the officers need to both know the purposes of their search and announce the purposes of their search. They cannot say, we have a warrant to search you, but we're not going to give it to you, and then later retroactively justify that failure by saying, it turns out we didn't need to give it to you because you were on probation anyway. There's nothing in Moreno that stands for that proposition, and the government seems actually hard-pressed to find anything in Moreno that stands for that proposition. So instead, in their brief, they say, well, it was different in Moreno because that person wasn't subject to suspicionless searches. Neither his parole condition nor Nights said that he was subject to suspicionless searches. But that distinction that the government argues in its brief totally ignores the fact that this Court, in deciding Moreno, specifically said, we're assuming for the sake of argument that Mr. Moreno had no expectations of privacy. If I could turn to the 924C issue briefly. It's really, I think that Judge McKeown really hit the nail on the head when she said, this is a small apartment. The gun is going to, quote, be proximate to both the drugs and possibly the defendant and the drug deal, no matter where it is. But in reality, in this case, the gun was not proximate to any of the locations. Proximate to the front door would have been at the front door. Proximate to the drugs would have been with the drugs. The gun was underneath a futon in the living room. Now, the government at trial, and again on appeal, talks often about how that is the ideal location for a gun because a gun could be accessible and strategically located in case a drug deal goes sour. The facts in this case, not the inferences, not the thing that jurors could assume, but the facts of this case were that a drug deal occurred and that the informant in the drug deal advised that the drug deal occurred through the front gate, through the front screen door. If you look at the exhibits in this case, clearly if something, if this drug deal were going awry or go sour or go south, whatever terms they choose to use, there is no way that a gun that is located down the hall, not a very long hall, but down the hall and on the other side of a futon and underneath a futon so that the officers testify twice that the only way to get at the gun was to lift the futon, would have been at all strategically located to help the person who was doing the drug deal at the front door. The fact that whoever was doing the drug deal at the front door actually had to pass by the couch is completely irrelevant. In this case, the detectives who were the monitoring, the confidential informant, specifically asked the confidential informant if there were guns involved, did you see a gun, was the dealer armed? We don't know the answer to that question, but we can assume that if the answer to that question had been yes, that would have come into evidence at trial. But it did not. So the only way this firearm could have been accessible in case a drug deal goes south was if it was on Mr. Hector's person. It wasn't. Similar Under that rationale, I mean, that doesn't make a lot of sense because it would mean that you'd never have the in furtherance if it weren't within your hand reach, for example, and we have cases that say otherwise. Actually, I looked at all the cases that the government has cited, and in each one of them, the firearm was either in hand reach, so they've referred specifically to Swofford, where the court took pains to note exactly how accessible that firearm was. It was located within arm's reach with the handle strategically located upward so that he could reach it. So in every case, it's either that, that it was in hand reach of the defendant at the time that he was found, or it was located with the drugs. And the reason for that is because to be in furtherance, it doesn't need to be in furtherance of the drug deal, right? It can also be in furtherance of the possession of the drugs. And for it to be in furtherance of possession of the drugs, the cases have generally held that they need to be located in the same location. There's a case in which they're both in a crawl space. There's a case in which they're both in a closet space. There are numerous cases where they're both in the same exact location. But none of the cases cited by the government or by the district court below involve the  So it's one place, totally separate from the drugs, totally separate from where the alleged drug deal took place. I see that my time is up. We'll give you two minutes for rebuttal. Thank you, Your Honor. This case is actually distinguishable from McGrew and Gros itself, and that points out part of the problem here, is that in McGrew and Gros you had invalid warrants because the warrants in both cases didn't describe the items to be seized. It wasn't a question of execution of the warrant inherently. It was a question of whether you could cure that by providing the relevant documents later. So it was a question in those cases as to the invalidity of the warrant itself. It's not a licit issue here. There is a particular warrant. There's no challenge to the warrant itself. The question is solely one of execution of the warrant. And that creates the problems under the exclusionary rule and with Gros itself. Well, was the entire warrant ever given to Hector, Mr. Hector? I was given to him in discovery in this case, it was indicated. In discovery. It was never actually served by the police officers during or at the end or in some relation to the actual search. That's true. He was only given the notice of service of search warrant during the search. But Gros indicated that what? The notice that's required under the Constitution, because there's nothing in the Constitution that says serve warrant, provide copy of the warrant. What's required is notice sufficient to file a suppression motion or to file a civil lawsuit. And he had that sufficient notice here. He filed the suppression ruling. He challenged the warrant. He lost. The court upheld the validity of the warrant itself. And that's the notice that the Supreme Court was getting out of Gros. The defendant points out that you need to assure the lawfulness of the authority of the search. But once you accept that the warrant doesn't have to be served at the outset of a search, you've kind of negated that, as well as the policing the police function, which the court addressed in Gros. If I could quote from Gant, the court said, quote, Judge Posner agreed the purpose of handing the occupant when present the warrant under Rule 41D, like that of the not-to-announce rule, is to head off breaches of the peace by dispelling any suspicion that the search is illegitimate. The purpose can only be served, of course, if the warrant is handed to the occupant as the search begins. Well, the Supreme Court in Gros rejected that. It rejected that notice of assurance of the lawful authority. And it rejected policing the police rationale. What it did hold was the defendant was entitled to sufficient notice to challenge the warrant in a suppression ruling or a civil lawsuit, and the defendant had that opportunity here. Thank you. Thank you. The case just argued is submitted. Thank, counsel, for your argument. There's a lot of new Supreme Court law that we will have to sort through and triage here.
judges: Hall, McKeown, Wardlaw